UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NATHAN TUBBS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 3:14-CV-01783 |
| ) | Judge Aleta A. Trauger |
| ) | |
| ABC PROFESSIONAL TREE ) | |
| SERVICE INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM & ORDER

Pending before the court is defendant ABC Professional Tree Service Inc.'s ("ABC") Motion to Set Aside Entry of Default (Docket No. 28), to which plaintiff Nathan Tubbs ("Tubbs") has filed a Response (Docket No. 37), and ABC has filed a Reply (Docket No. 41). For the following reasons, the motion will be granted.

## BACKGROUND

This is an action brought by an employee against an employer under the federal Family Medical Leave Act ("FMLA") and Tennessee Disability Act ("TDA"). Tubbs is a resident of Cheatham County, Tennessee. ABC is a foreign corporation doing business in Tennessee that is registered to receive service of process in Tennessee through its agent, CT Corporation Systems, Inc. ("CT Corp.").

ABC provides vegetation management services for electric utilities and municipalities. ABC maintains two types of work crews: (1) "time and material crews," which operate under contracts and receive higher pay, and (2) "unit crews," which are not guaranteed to have any jobs

1

or hours for crew members on any given day and are paid less.

On April 24, 2014, Tubbs was seriously injured in an accident unrelated to work. At the time of his accident, Tubbs was employed as a foreman on a time and material crew and was paid at a rate of $20.38 per hour. Tubbs required surgery and weeks of recovery. Tubbs applied for and was granted leave under the FMLA from April 24, 2014 through July 14, 2014. One week prior to the expiration of his FMLA leave, Tubbs claims that he was told by ABC that his job was no longer available. Tubbs avers that ABC offered him the opportunity to return, but only as a driver on a unit crew (*i.e.*, what Tubbs believes to be a "demotion") with a $6.00 per hour decrease in pay. Tubbs maintains that, shortly thereafter, ABC hired someone else and assigned him to the time and material crew at the higher rate of pay. On September 21, 2014, Tubbs's pay was increased by one dollar per hour to $15.00 per hour; it has not been adjusted since that time.

On August 29, 2014, Tubbs filed the Complaint against ABC in this court. (Docket No. 1.) On October 27, 2014, Tubbs filed a copy of a Summons that reflected that ABC had been served on September 25, 2014, via its registered agent, CT Corp., at 9800 South Gay Street, Suite 2021, Knoxville, TN, 37929-9710 (by means of registered mail with return receipt). (Docket No. 5.) Tubbs simultaneously filed a Motion for Entry of Default. (Docket No. 6.) On November 14, 2014, the clerk of court entered default against ABC under Federal Rule of Civil Procedure 55(a). (Docket No. 8.)

On December 1, 2014, Tubbs moved this court for a default judgment of liability under Federal Rule of Civil Procedure 55(b). (Docket No. 10.) The court referred the motion to Magistrate Judge Brown for a determination of damages. (Docket No. 12.) At the Magistrate Judge's direction, on March 2, 2015, Tubbs filed a brief and declaration regarding his request for

default judgment and the damages he sought in connection therewith. (Docket Nos. 16, 17.) The Magistrate Judge concluded that Tubbs was entitled to back pay in the amount of $8,456.19, compensatory damages in the amount of $25,000, front pay in the amount of $18,855.40, and all requested attorneys' fees and costs.[1] (Docket No. 18.) On March 13, 2015, the Magistrate Judge docketed his Order and directed the clerk to serve copies of it upon ABC at (1) CT Corp.'s address on the certificate of service, (2) ABC Professional Tree Service, Inc., 201 Front Ridge Road, Webster, Texas 77598, and (3) ABC Professional Tree Service, Inc., 4831 Old Galveston Road, Houston, Texas 77017. (*Id.* at p. 3.; see also Docket No. 19 (certified mail receipts).) The clerk later mailed another copy of the order to ABC Professional Tree Service, Inc., 201 Flint Ridge Road, Webster, Texas 77598. (Docket No. 27 (certified mail receipt).)

On April 2, 2015, ABC filed the pending Motion to Set Aside Entry of Default. (Docket No. 28.) On April 23, 2015, Tubbs filed a Response. (Docket No. 37.) On May 7, 2015, ABC filed a Reply. (Docket No. 41.)

## MOTION TO SET ASIDE ENTRY OF DEFAULT

**A.  Legal Standard**

Federal Rule of Civil Procedure 12(a) requires that a defendant serve an answer within twenty-one days of being served with the summons and complaint. Fed. R. Civ. P. 12(a)(1)(A)(I). When a defendant fails to respond or otherwise defend the action within the time permitted, the clerk of court can enter default against the defendant. Fed. R. Civ. P. 55(a).

---

[1] In doing so, the Magistrate Judge recommended awarding Tubbs one year of front pay and declined to award Tubbs the 27 years of front pay (*i.e.*, $378,884.08) he had requested. (Docket No. 18.) The Magistrate Judge declined to agree with Tubbs's assertion that he would not be able to find suitable comparable work during that lengthy period. (*Id.*)

3

However, Rule 55(c) authorizes the court to set aside an entry of default for "good cause." Fed. R. Civ. P. 55(c); *United States v. $22,050.00 in U.S. Currency*, 595 F.3d 318, 324-25 (6th Cir. 2010). To determine whether good cause exists, the court must weigh three equitable factors: (1) whether the defendant's culpable conduct led to the entry of default; (2) whether the defendant has a meritorious claim or defense; and (3) whether the plaintiff would be prejudiced if default was set aside. *Burrell v. Henderson*, 434 F.3d 826, 831-32 (6th Cir. 2006); *Waifersong, Ltd. Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992); *Jack Tyler Eng'g Co., Inc. v. Colfax Corp.*, No. 10-2373-STA, 2011 WL 1256610, at *3 (W.D. Tenn. Mar. 31, 2011). Although the court must consider all three factors, *Shepard Claims Serv., Inc. v. William Darrah & Assoc.*, 796 F.2d 190, 193-94 (6th Cir. 1986), a defendant need not satisfy all three prongs in order to have entry of default set aside. *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 353 (6th Cir. 2003). Indeed, the Sixth Circuit has held that, when the other two factors "militate in favor of setting aside the entry, it is an abuse of discretion for a district court to deny a Rule 55(c) motion in the absence of a willful failure of the moving party to appear and plead." *$22,050.00 in U.S. Currency*, 595 F.3d at 324 (citing *Shepard Claims*, 796 F.2d at 194). Importantly, the Sixth Circuit has emphasized a clear preference for trials on the merits as opposed to defaults. *Shepard Claims*, 796 F.2d at 194. Under this rubric, the court will consider each of the three equitable factors.

  **B. Meritorious Defense**

A defense is meritorious if "there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *$22,050.00 in U.S. Currency*, 595 F.3d at 326 (quoting *Burrell*, 434 F.3d at 834). A defendant is not required to show that its

4

defense is likely to succeed on the merits or offer detailed factual allegations in support of the defense. *Id.* The Sixth Circuit has held that a defense need only be "good at law," *id*. (citing *Williams v. Meyer*, 346 F.3d 607, 614 (6th Cir. 2003)), and present only "a hint of a suggestion which, proven at trial, would constitute a complete defense." *Id.* (citation and quotations omitted). ABC contends that it has meritorious defenses against both Tubbs's FMLA and TDA claims.

First, ABC asserts that it has a meritorious FMLA defense because there was a legitimate non-discriminatory reason for failing to restore Tubbs to his former job position – namely, that the position no longer existed. ABC's FMLA defense relies upon the principle that "[a]n employee returning from FMLA leave is not entitled to restoration unless he would have continued to be employed if he had not taken FMLA leave." *See Madry v. Gibraltar Nat'l Corp.*, 526 F. App'x 593, 596 (6th Cir. 2013) (quoting *Grace v. USCAR and Bartech Technical Servcs., LLC*, 521 F.3d 655, 669 (6th Cir. 2008)). Stated differently, if an employee "would have lost his job or been laid off even if he had not taken FMLA leave," an employer does not violate the FMLA by terminating that employee while he is on leave. *See Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 245 (6th Cir. 2004); *see also* 29 C.F.R. 825.216(a) ("An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period."); 29 C.F.R. 825.216(a)(2) ("If a shift has been eliminated, or overtime has been decreased, an employee would not be entitled to return to work that shift or the original overtime hours upon restoration."); 29 C.F.R. 825.216(a)(3) ("If an employee was hired for a specific term or only to perform work on a discrete project, the employer has no obligation to restore the employee if the employment term or project is over and the employer would not otherwise have continued to employ the

5

employee."). ABC contends that, during Tubbs' period of leave, ABC's contract customer decided to eliminate the time and material crew on which Tubbs had worked. ABC claims that it is for this reason – because the crew, and thus Tubbs's position as foreman of the crew, were eliminated – and because no other foreman positions were available, that it offered Tubbs a position on a unit crew upon his return (which Tubbs accepted). Thus, ABC maintains, Tubbs was not "demoted"; rather, his former position was eliminated in a manner that does not trigger liability under the FMLA.

ABC also maintains that it has a meritorious defense to Tubbs's claim that he was discriminated against and terminated in violation of the Tennessee Disability Act. This defense is straightforward – ABC denies that the Plaintiff was ever terminated from his employment (a subject that Tubbs highlights was discussed in the Magistrate Judge's Order). (*See* Docket No. 18 at p. 2). ABC further argues that the Complaint fails to state a claim for which relief can be granted because it is devoid of factual allegations supporting the assertion that Tubbs is a qualified individual with a disability or was ever regarded as such by ABC.

The court finds that ABC has come forward with more than one possible defense that may be good at law and would show a "hint of a suggestion" of a complete defense. Despite Tubbs's effort to argue the merits of these defenses, *see* Response at p. 5 and exhibits, it is unnecessary for the court to consider the likelihood of ABC's success on the merits for purposes of setting aside the default. *See $22,050.00 in U.S. Currency*, 595 F.3d at 326 ("All that matters is whether a well-stated defense, *if sustained*, would change the outcome." (emphasis added)). Accordingly, the court holds that this factor weighs in favor of setting aside the entry of default.

C. **Prejudice to Plaintiff**

The second equitable factor under this analysis is prejudice to the plaintiff if the default is

set aside. The Sixth Circuit has held that simple delay in advancing the case is insufficient. *Burrell*, 434 F.3d at 835; *United Coin Meter Co., Inc. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir.1983).[2] In order to show prejudice, the plaintiff must show that delay will result in one of the following: "loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Burrell*, 434 F.3d at 835 (citing *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990)); *INVST Fin. Grp., Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 398 (6th Cir. 1987) (quoting 10 C. Wright, A. Miller and M. Kane, Federal Practice and Procedure § 2699 at 536–37 (1983)); *Jack Tyler Eng'g Co.*, 2011 WL 1256610 at *4.

Based on these principles, the court finds that Tubbs has failed to show how he will be prejudiced if the default is set aside. Tubbs has not argued that evidence will be lost or discovery will be made more difficult. There is no suggestion of fraud or collusion. Therefore, Tubbs has not established that delay will prejudice his interests. Tubbs argues in passing, *see* Response at pp. 5-6, that he will be prejudiced if this litigation continues because he (a) continues to receive less pay from ABC than before his demotion, (b) will incur additional attorneys' fees, and (c) suffers from depression and anxiety as a result of his experiences with ABC. The court finds that these arguments as to prejudice, while perhaps personally compelling to Tubbs, are unconvincing as a matter of law. As a general matter, any plaintiff who obtains an entry of default, only to have that judgment set aside, faces the inconvenience of additional expense in prosecuting a case to its conclusion. Thus, much of the prejudice Tubbs complains about is not unique to this case and so does not clearly weigh against setting the default aside. Moreover, it is not uncommon for

---

[2] Although *United Coin* involved a Rule 60(b) motion to set aside default judgment, rather than a Rule 55(c) motion to set aside entry of default, the court stated that all three factors should be applied in both situations. *Id*. at 845.

litigants, especially in discrimination cases, to be forced to litigate from what they view to be positions of financial disadvantage; this, in and of itself, is not prejudice that alone justifies denying ABC an opportunity to defend its case on the merits. Finally, there is no evidence that the emotional toll of Tubbs' experience with ABC, while potentially very real, has been proximately worsened by the delay in this litigation related to the entry of default, nor has Tubbs pointed to precedent indicating that is this a type of prejudice recognized by the Sixth Circuit as sufficient to tip the balance of this equitable factor in Tubbs's favor. Accordingly, the court holds that, in the absence of a showing of prejudice, this factor weighs in favor of setting aside the entry of default.

### D. Defendant's Culpability

The third and final equitable factor is the culpability of the party in default. To be considered culpable, "the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on judicial proceedings." *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 433 (6th Cir. 1996) (quoting *INVST Fin. Grp.*, 815 F.2d at 399). The Sixth Circuit has explained that "mere negligence or failure to act reasonably is not enough to sustain a default." *$22,050.00 in U.S. Currency*, 595 F.3d at 327. It is not necessary that the neglect or oversight offered as reason for the delay in filing a responsive pleading be excusable. *Shepard Claims*, 796 F.2d at 194.

ABC submits that, although the Complaint and Summons were served by certified mail on its registered agent on September 25, 2014, due to mistake, inadvertence, or neglect, ABC did not receive actual notice of this action until a March 25, 2015. ABC has submitted an affidavit from its General Counsel, Dennis Cain ("Cain"), in which Cain states that ABC is unable to

8

locate records indicating that anyone at ABC *ever* received a copy of the Summons and Complaint or subsequent filings in this case, despite the fact that service of process on agent CT Corp was achieved in September 2014 and on other occasions. (Docket No. 29 at ¶ 4.) Cain further states that, if any notices related to this case were delivered by CT Corp. to ABC, they were not forwarded to his office due to mistake or error. (*Id*.) As a result, Cain represents that he did not receive notice of this case until he received an email on March 25, 2015 (from ABC's insurance carrier) attaching a copy of the Magistrate Judge's March 13, 2015, Order awarding money damages to Tubbs. (Id. at ¶ 5.) Cain states that he acted immediately on behalf of ABC to retain counsel and filed the pending motion within one week. (*Id*.)

ABC does not dispute that service of process was properly accomplished in this case by service on ABC's registered agent. The court finds that ABC, through its corporate counsel, was negligent and otherwise failed to act reasonably to answer the Complaint in this instance. ABC has admitted that it failed to answer or appear to defend in this case, despite the fact that Tubbs properly served ABC's registered agent. ABC has provided an explanation, although a lax one, about why the Complaint did not reach Cain's attention, which essentially amounts to the confession of an internal communication error (that may have occurred on more than one occasion). However, this is negligence at most. The court does not find evidence, as Tubbs suggests, that what occurred here was willful. Indeed, ABC has provided evidence that it acted rapidly to correct its negligence upon its being brought to ABC's attention by its third-party insurer.

It is clear that the breakdown in this case is attributable to ABC and its legal department. Default, however, "should not be used as a vehicle for disciplining attorneys." *Shepard Claims*,

796 F.2d at 195. Viewing the proffered explanation in a light most favorable to ABC, the court finds that ABC, while negligent, did not act intentionally or with a reckless disregard to thwart the judicial proceedings. Therefore, ABC's conduct does not rise to the level of culpability that would justify denying a motion to set aside default under Rule 55(c). *See, e.g.*, *Hooker v. Hooker*, No. 2:11-2252-JTF-TMP, 2014 WL 4718193, at *5 (W.D. Tenn. July 9, 2014), *report and recommendation adopted by*, 2014 WL 4716436, at *3 (W.D. Tenn. Sept. 22, 2014) (finding no culpable conduct, despite fact that defaulting party was served with summons and complaint and signed for numerous filings for over one year, but claimed documents were lost); *Rutherford v. Credit Bureau of N. Am.*, No. 3:08-CV-19, 2012 WL 910136, at *3 (E.D. Tenn. Mar. 16, 2012) (noting that, while defendants' statements that electronic difficulties prevented them from being notified of court filings were not "compelling," they were "plausible," and thus defendants had not acted culpably); *Jack Tyler Eng'g*, 2011 WL 1256610, at *3 (finding no culpable conduct where defendant was properly served through its registered agent but proffered an explanation, "albeit a vague one," about why the complaint did not reach defendant's corporate counsel). Accordingly, the court concludes that this factor weighs in favor of setting aside the default.

### E. Plaintiff's Request for Sanctions

Although the court concludes that the conduct of ABC does not justify entry of default, such conduct does warrant some sanction. ABC's actions in this case needlessly increased the amount of time and energy that Tubbs, the Magistrate Judge, and this court have had to spend on this case. Accordingly, the court concludes that imposition of monetary sanctions is appropriate.

The Sixth Circuit has recognized a district court's inherent power to impose monetary sanctions when setting aside a default under Fed. R.C.P. 55(c). *Shepard Claims*, 796 F.2d at 195

(noting that setting aside default "does not preclude the district court from assessing or determining some appropriate penalty or sanction against the defendant or his counsel for the delay occasioned by the careless and inexcusable conduct of defendant's counsel"). Indeed, "[t]he imposition of conditions as part of granting a Rule 55(c) motion can be used to rectify any prejudice suffered by the non-defaulting party as a result of the default and the subsequent reopening of the litigation. The most common type of prejudice is *the additional expense caused by the delay*, the hearing on the Rule 55(c) motion, and the introduction of new issues." Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, & Richard L. Marcus, 10A Federal Practice and Procedure, § 2700 (3d ed. 2011) (emphasis added). A finding that Tubbs suffered prejudice in delay and expense sufficient to justify monetary sanctions, but insufficient to weigh in its favor in the three-factor good cause analysis, is acceptable and a result of the more stringent prejudice requirement under Rule 55(c). *See, e.g., Dassault Systemes, SA v. Childress*, 663 F.3d 832, 842 (6th Cir. 2011) (noting delay and increased litigation cost do not generally support entry of default). Thus, the court will grant ABC's motion to set aside default on the condition that ABC pay Tubbs's reasonable attorney's fees and expenses incurred in preparing his (a) application for entry of default, (b) motion for default judgment, and (c) response in opposition to ABC's motion to set aside default.

The court has examined the attorney time and expense records submitted by Tubbs's counsel in connection with the Motion for Default Judgment. (*See* Docket Nos. 17-1, 17-3.) The court will not consider the expense request, because the only expense is the initial filing fee in this matter. The attorney time spreadsheet covers the inception of this matter through the filing

of the Motion for Default Judgment on March 2, 2015, and seeks $10,310.00 in fees.[3] (*Id.*) The time records are supported by a detailed affidavit from Tubbs's main counsel, Anne Williams, which describes her experience, skill, and reputation, as well as those of her associate and paralegal. The Magistrate Judge found these representations credible, and this court agrees. (*See* Docket No. 18.) The court further finds the standard billing rates at The Higgins Firm – $350.00 an hour for Ms. Williams, $220.00 an hour for Associate Kimberly Simpson, and $100 per hour for Senior Paralegal Brandon Hall – are appropriate for attorneys and legal professionals of similar skill and experience in the Nashville area.

The attorney time spreadsheet includes entries for tasks not limited to the application for entry of default and motion for default judgment. The court has, therefore, identified the entries which are clearly relevant to the sanctions award. The court's calculations are as follows. Mr. Hall contributed 14.3 hours of relevant work at $100.00 per hour, totaling $1,430.00. Ms. Simpson contributed 4.9 hours of relevant work at $220.00 per hour, totaling $1,078.00. Ms. Williams contributed 7.8 hours of work at $350.00 per hour, totaling $2,730.00. Therefore, the total sanction for the application for entry of default and motion for default judgment is $5,238.00. There remains the expense of responding to the pending motion, again made necessary by ABC's conduct. Tubbs was forced to incur the cost of researching and drafting an eight-page response with exhibits. Based on its experience, the court, in its discretion, determines the appropriate sanction award for the preparation of the motion response is

---

[3] Tubbs's counsel represents that the fees listed on the spreadsheet submitted to the court reflect the benefit of a twelve percent "write-off", (*i.e.*, reduction), and that the actual total amount of fees incurred, based on hours actually worked, is $13,195.00. (Docket No. 17 at p. 9.) Counsel states that, while all of the hours worked were necessary, she exercised her discretion in submitting the reduced billing request to the court. (*Id.*)

$1,762.00.

In sum, the court will assess a monetary sanction against ABC for negligently delaying this action in the amount of $7,000.

## **CONCLUSION**

Having found that the equitable factors in this case favor setting aside the default, ABC's Motion to Set Aside Entry of Default (Docket No. 28) is **GRANTED**, conditioned upon payment by the defendant of the monetary sanction detailed herein.

Upon payment by ABC of the sum of $7,000 to counsel for Tubbs by June 19, 2015, the court will enter a further order effectuating this ruling. Counsel for the plaintiff shall file notice with the court upon receiving the monetary sanction payment.

It is so **ORDERED**.

Enter this 4th day of June 2015.

_____
ALETA A. TRAUGER
United States District Judge